**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LEAH SALMON, ) | 3:06-CV-00398-ECR (RAM) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Plaintiff filed a motion for reversal of the commissioner's decision on October 26, 2006 (Doc. #8). Defendant opposed the motion and filed a cross-motion to affirm the commissioner's final decision on November 11, 2006 (Doc. #9). Plaintiff replied and opposed Defendant's motion on November 30, 2006 (Doc. #11).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

At the time of the decision, Plaintiff Leah Salmon was a forty-three year old woman with a highschool, plus two years of college, education and a work history as a lab technician and packer (Tr. 17). Plaintiff filed an application for Supplemental Security Income (SSI) on June 17, 2003 (Tr. 17) asserting chronic fatigue syndrome (CFS), fibromyalgia, somatoform disorder, chronic abdominal pain and right leg numbness have caused her to be permanently and completely disabled since December 16, 1999 (Tr. 18).

Plaintiff, represented by attorney Raymond Rodriguez, appeared and testified at the disability hearing on August 22, 2005 (Tr. 17). The Administrative Law Judge (ALJ) followed the five-stage procedure for evaluating disability claims, set forth in C.F.R. § 404.1520, and found Plaintiff could not perform any of her past relevant work and was limited to "sedentary work" (Tr. 28). However, the ALJ found under step five that there were three jobs the SSA determined in January 2004 that Plaintiff could perform consistent with her age, education, work experience, and residual functional capacity to do sedentary work (Tr. 22, 27-28). Accordingly, in the decision issued on January 1, 2006, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act (*Id.*). Plaintiff appealed the decision and the Appeals Council denied review (Tr. 5-7). Thus, the ALJ's decision became the final decision of the Commissioner (*Id.*).

Plaintiff now appeals the ALJ's decision to the district court, in which she argues: (1) the ALJ erred by not obtaining testimony from a vocational expert regarding the diagnosis of undifferentiated somatoform disorder, (2) the ALJ erred in finding Plaintiff could engage in a full range of sedentary work, (3) Plaintiff's impairments meet or equal the SSA's guidance for CFS, and (4) the ALJ erred in discrediting Plaintiff's subjective complaints of pain and limitations (Doc. #8).

The Commissioner stipulates that the ALJ fairly and accurately summarized the material evidence and testimony (Doc. #9 at 1).

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Smolen v. Charter*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and

undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id.* The ALJ alone is responsible for determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986); 20 C.F.R. § 404.1512(a). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected … to last for a continuous period of not less than 12 months …" 42 U.S.C. §423 (d)(1)(A).

## III. DISCUSSION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see* 20 C.F.R. §§ 404.1520, 416.920. If at any step the SSA can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

In the first step, it must be determined whether the claimant is engaged in "substantially gainful activity"; if so, a finding of nondisability is made and the claim is denied. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in substantially gainful activity, the second step requires determining whether her impairments or combinations of impairments are "severe." *Yuckert*, 482 U.S. at 140-41. If a claimant's impairments are so slight that they cause no more than minimal functional limitations, it will be determined that the claimant is not disabled. 20 C.F.R. § 404.1520. If, however, it is found that the claimant's impairments are severe, such impairments will be presumed to be sufficiently severe provided the impairments meet or equal the impairments described in the Commissioner's Listing of Impairments and are of sufficient duration. 20 C.F.R. § 404.1520(d). If the claimant's impairments meet or equal a listed impairment, the claimant is conclusively presumed disabled. *Id.* If the claimant's impairments are severe, but

3

do not meet or equal a listed impairment, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141. In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If she can still do past relevant work, then the ALJ should determine that she is not disabled. 20 C.F.R. § 404.1520(f). If, however, she cannot perform past relevant work, the burden shifts to the Commissioner, *Yuckert*, 482 U.S. at 144, to establish, in step five, that the claimant can perform work available in the national economy. *Id.* at 141-42; *see* 20 C.F.R. §§ 404.1520(e), 404.1520(f), 416.920(e), 416.920(f).

Application of steps four and five requires the ALJ review the claimant's residual functional capacity and the physical and mental demands of the work she did in the past. 20 C.F.R. § 404.1520(f) & (g). "Residual functional capacity" (RFC) is what the claimant can still do despite her limitations. 20 C.F.R. § 404.1545. If the individual cannot do the work she did in the past, the ALJ must consider her RFC, age, education, and past work experience to determine whether she can do other work. *Id.* If the Commissioner establishes the claimant can do other work which exists in the national economy, then she is not disabled. 20 C.F.R. 404.1566.

In the present case, the ALJ applied the five-step sequential evaluation process and found, at steps one through three, that Plaintiff was not engaged in substantially gainful activity (Tr. 18) and that the medical evidence established Plaintiff has chronic abdominal and pelvic pain and fibromyalgia (Tr. 22). However, the ALJ concluded these impairments did not meet or equal the level of severity of any impairments described in the Listing of Impairments (Appendix I, Subpart P, Regulation No. 4) either individually or in combination (Tr. 22). At step four, the ALJ determined that Plaintiff's impairments prevented her from performing any of her past relevant work (Tr. 26); however, at step five, the ALJ determined Plaintiff has the residual functional capacity to perform substantially all of the full range of sedentary work and is, therefore, not disabled (Tr. 28). The ALJ concluded, based on the

4

SSA's determination in January 2004, that Plaintiff could perform sedentary work as a lens-block gauger, table worker and loader, semi-conductor dies (Tr. 24).

A.  **Vocational Expert Testimony**

Plaintiff argues the ALJ was required to obtain testimony from a vocational expert because Plaintiff was diagnosed with undifferentiated somatoform disorder (USD), which Plaintiff contends is amply supported by the record (Doc. #11 at 3). Plaintiff asserts the ALJ ignored the diagnosis of USD and failed to consider the consequences of USD on Plaintiff's ability to perform sedentary work (*Id.*).

> When a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable … and the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities. Thus, the grids will be inappropriate where the predicate for using the grids-the inability to perform a full range of either medium, light or sedentary work activities-is not present."

*Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)(internal citations omitted).

The record indicates Plaintiff was first diagnosed with USD, by Sheri Skidmore, Ph.D., during a psychological consultative evaluation on October 10, 2003 (Tr. 20, 97, 277). In that evaluation, Dr. Skidmore indicated Plaintiff does not meet the criteria for Somatization Disorder and diagnosed Plaintiff with USD "due to her lack of pain symptomology in this interview, her willingness to attend to the Mental Status Examination and do so well, and that treating physicians have been able to find nothing wrong with her and have asked for psychiatric evaluation to perhaps determine the etiology of her current pain." (Tr. 278). Dr. Skidmore stated that although USD is given as the etiology of her current pain, "[n]one of her activities are limited by any mental problems." (Tr. 276). Based on Dr. Skidmore's assessment, the SSA (Roldan Pastora, Ph.D.) determined Plaintiff did not have a severe mental impairment (Tr. 279). It appears Dr. Skidmore is the only doctor that diagnosed Plaintiff with USD.

Plaintiff's argument– because she was diagnosed with USD, a non-exertional mental impairment, the ALJ was required to obtain testimony from a vocational expert – lacks merit. The ALJ was only required to elicit testimony from a vocational expert if Plaintiff's USD was found to be "sufficiently severe" so as to significantly limit the range of work permitted by Plaintiff's exertional limitations. *Bowen*, 856 F.2d at 1340. Here, the ALJ examined the medical record and reports of numerous physicians, concluding the evidence did not establish Plaintiff's USD was sufficiently severe.

Plaintiff also argues the ALJ erred in not obtaining a vocational expert because the SSA identified three jobs Plaintiff could perform and Plaintiff was deprived of the opportunity to cross-examine the makers of those conclusions (Doc. # 8 at 5). Plaintiff asserts depriving her of the opportunity to cross-examine the decision-makers constitutes legal error because the ALJ attempted to bring vocational considerations into his findings and the record fully supports USD; therefore, Plaintiff contends a vocational expert was necessary to analyze this claim (*Id.*). However, this argument also lacks merit. As discussed *supra*, the ALJ determined at step two that Plaintiff's USD disorder was not sufficiently severe. Accordingly, the ALJ was not required to obtain a vocational expert based on USD.

For the reasons set forth *supra*, substantial evidence supports the ALJ's determination that a vocational expert was not required.

**B.     Sedentary Work**

Plaintiff argues the ALJ erred in discrediting the opinion of her treating physician, Dr. O'Gara, in determining she could perform sedentary work (Doc. 8 at 5). The record indicates, after a five-hour functional capacity evaluation, Dr. O'Gara determined Plaintiff's "overall capacity to perform is less than sedentary, endurance is poor, body mechanics are poor, due to pain and muscle weakness." (Tr. 312). Dr. O'Gara opined that Plaintiff suffered from CFS and fibromyalgia, on a fibromyalgia questionnaire, finding Plaintiff's impairments "severe" and "indefinite" (Tr. 313).

6

Although the ALJ noted Dr. O'Gara treated Plaintiff from February 23, 1995 through August 5, 2005, the ALJ determined he could not give more than "slight weight" to the FRC and fibromyalgia questionnaire because Dr. O'Gara's notes "do not contain clinical or diagnostic findings to support the limitations identified in those assessments." (Tr. 21). Specifically, the ALJ determined Dr. O'Gara's opinions were entitled to only slight weight for the following reasons: (1) Dr. O'Gara testified the RFC assessments were completed by physical therapists and he used those assessments to render his opinions; (2) Dr. O'Gara's opinions were not supported by the internal medicine CE by Dr. Simon, the consultative medical examiner; (3) Dr. O'Gara's opinions were inconsistent with the daily activities Plaintiff reported to Dr. Skidmore; and, (4) the SSA determined Plaintiff was capable of performing sedentary work and could perform three particular jobs (*Id.*).

By rule, the SSA favors the opinion of a treating physician over non-treating physicians. *See* C.F.R. § 404.1527.

> If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight. If a treating physician's opinion is not given controlling weight because it is not well-supported or because it is inconsistent with other substantial evidence in the record, the Administration considers specific factors in determining the weight it will be given. Those factors include the [l]ength of the treatment relationship and the frequency of examination by the treating physician; and the nature and extent of the treatment relationship between the patient and the treating physician....Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and other factors such as the degree of understanding a physician has of the Administration's disability programs and their evidentiary requirements and the degree of his or her familiarity with other information in the case record.

*Orn v. Astrue*, ____ F. 3d ____ (9th Cir. 2007), 2007 WL 2034287, 7 (official citation not available)(internal citations omitted). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.*

7

Dr. O'Gara testified he never personally performed a functional capacity evaluation on Plaintiff to be able to tell exactly what her limitations are and he relied on a physical therapist's evaluation in making his RFC determination (Tr. 399). Dr. O'Gara also testified that he did not actually diagnose Plaintiff with CFS or fibromyalgia (Tr. 396-397). He explained the fibromyalgia diagnosis came from Dr. Gary Warren, a chiropractor, and that he just "carried on with it." (Tr. 396). Dr. O'Gara never examined Plaintiff for the particular tender points associated with fibromyalgia, although he asserted she had sixteen tender points (Tr. 396-397). Dr. O'Gara also testified he never diagnosed Plaintiff with CFS, that the CFS diagnosis came along with the fibromyalgia diagnosis and, in the last year or two, he was essentially treating Plaintiff for opioid management (Tr. 397-398).

On December 30, 2003, after examining Plaintiff, Dr. Simon diagnosed Plaintiff with CFS and fibromyalgia; however, he found no significant point tenderness to areas commonly involved in fibromyalgia and determined Plaintiff was able to do sedentary or light work (Tr. 295, 298). Two months prior to that examination, on October 10, 2003, Plaintiff reported to Dr. Skidmore that she makes breakfasts, lunches, snacks and dinners for herself and her sons; does household chores, including dishes, feeding her animals, picking up around the house and laundry; knits; does crafts; goes to her sons' athletic events; helps her sons' with their homework; and, has frequent social contacts (Tr. 276). Based on this information, the SSA determined Plaintiff could do sedentary work (Tr. 22).

This is not a case where the treating physician and examining physicians each performed a physical examination on Plaintiff and came to different conclusions. Here, Dr. Skidmore and Dr. Simon provided independent clinical findings based on their own examinations while Dr. O'Gara testified he never actually examined Plaintiff in determining her RFC and never personally diagnosed Plaintiff with CFS or fibromyalgia. However, it should be noted that Dr. O'Gara has been treating Plaintiff since 1995 and, therefore, has extensive personal knowledge of her medical history.

8

Although "opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant", the Ninth Circuit recognizes that "when an examining physician provides independent clinical findings that differ from findings of the treating physician, such findings are substantial evidence." *Astrue*, at 8. Accordingly, under these facts, the ALJ's finding that Dr. O'Gara's functional capacity evaluation, RFC and fibromyalgia questionnaire are only entitled to "slight weight" is supported by substantial evidence.

## C. SSA's Guidance for CFS

Plaintiff argues her symptoms associated with CFS meet or equal the SSA's guidance for CFS and the ALJ erred in not making that determination (Doc. #8 at 7). The record indicates the ALJ did not include CFS in his evaluation of the severity of Plaintiff's impairments (*Id.*). The ALJ found the medical evidence indicated Plaintiff's chronic abdominal and pelvic pain and fibromyalgia were severe impairments and those impairments did not meet or equal, either singly or in combination, one of the listed impairments (Tr. 22).

The medical evidence establishes that both Dr. O'Gara and Dr. Simon determined Plaintiff suffered from CFS (Tr. 20, 295). Although the ALJ noted Plaintiff alleges CFS (Tr. 22) and Dr. Simon's report, which the ALJ relied on to discredit Dr. O'Gara's opinions, diagnoses Plaintiff with CFS (Tr. 295), the ALJ failed to consider the potential effects of CFS in combination with her other severe impairments in determining whether Plaintiff's impairments are severe enough to meet or equal a listed impairment. The ALJ only considered chronic abdominal and pelvic pain and fibromyalgia in his severity determination (Tr. 22).

Pursuant to 20 C.F.R. § 416.923:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if

9

considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.

The record indicates the ALJ failed to consider whether Plaintiff's symptoms of CFS, singly or combined with her other impairments, amounted to a listed impairment. Even if the ALJ determined Plaintiff's CFS, alone, is not severe, he was required to consider the combined impact of her impairments throughout the disability determination process because he did, in fact, find a medically severe combination of impairments (Tr. 22). Based on this error, it is unclear whether the ALJ factored the combined impact of all her impairments, including CFS, into his analysis at step five with regard to Plaintiff's RFC and her ability to perform other jobs.

### D. **Credibility Assessment**

Plaintiff argues the ALJ erred in finding her complaints of pain and fatigue not fully credible (Doc. #8 at 10). Specifically, Plaintiff contends the ALJ discredited her testimony because it was not supported by examinations by physicians other than Dr. O'Gara (*Id.*). Plaintiff contends the ALJ discredited Dr. O'Gara's opinion because Dr. O'Gara relied on the diagnosis of a chiropractor in determining Plaintiff suffered from fibromyalgia and, based on that determination, discredited Plaintiff's own testimony of pain (*Id.* at 10-11). Plaintiff also contends the ALJ discredited her testimony based on the activities she reported doing more than two years earlier (*Id.* at 12.). Plaintiff argues the ALJ disregarded her testimony that her condition had changed since those reports and, even if Plaintiff could engage in the activities ascribed to her by the ALJ, those activities do not amount to sufficient reasons for discrediting her subjective complaints of pain (Tr. 13).

A claimant's credibility becomes important at the stage where the ALJ assesses the claimant's RFC. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). Subjective symptom testimony may tell of greater limitations than medical evidence alone. *Id.* Thus, a

10

claimant's credibility is often crucial to a finding of disability. *Id.* (*citing* Social Security Rule 96-7p (1996)).

In general, when deciding whether to accept or reject a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: an analysis under *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (the "*Cotton* test") and an analysis of the credibility of the claimant's testimony regarding the severity of his or her symptoms. *Smolen*, 80 F.3d at 1281; *see also* 20 C.F.R. § 404.1529 (adopting two-part test). "If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimants testimony about the severity of his or her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)(en banc). This test "imposes only two requirements on the claimant: (1) [he or] she must produce objective medical evidence of an impairment or impairments; and (2) [he or] she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis in original); *see also* 20 C.F.R. § 404.1529(a)-(b).

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell*, 947 F.2d at 345-346 (*quoting Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). When analyzing credibility, an ALJ may properly consider medical evidence in the analysis. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence

11

is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *see also Batson v. Commissioner of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2003)(holding ALJ properly determined credibility where claimant's testimony was contradictory to and unsupported by objective medical evidence). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, ____ F.3d____ (9th Cir. 2007), 2007 WL 2034287, 9 (official citation not available).

The ALJ determined Plaintiff suffers from medically determinable severe impairments; therefore, Plaintiff has satisfied the first prong of the *Cotton* test (Tr. 22). There is no evidence of malingering and the ALJ made no such finding. Accordingly, in order to reject Plaintiff's testimony regarding the severity of her pain, the ALJ must offer specific, clear and convincing findings supported by the record.

The ALJ determined Plaintiff's mental complaints were not credible because (1) the SSA determined on November 12, 2003 that she did not have a severe mental impairment; (2) Dr. Skidmore's psychological CE resulted in a normal MSE; (3) she is able to perform multiple normal daily activities, such as making breakfasts, lunches and dinners for herself and her kids, washing dishes, feeding pets, doing laundry, knitting and crafts, going to athletic events, helping her children with their homework, and having frequent social contacts; (4) GAF was rated and 75 and the functional assessment identified no limitations; (5) the record contains no evidence of treatment or referral to a mental health professional; (6) there is no evidence of hospitalizations or group therapies; and, (7) the medical records do not document any mental conditions or problems (Tr. 23). Based on these findings, the ALJ concluded Plaintiff has no limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace, and there is no evidence of any

episodes of decompensation, each of an extended duration (*Id.*). The ALJ offered specific, clear and convincing findings supported by the record regarding Plaintiff's mental complaints.

The ALJ then determined Plaintiff's subjective complaints of pain and fatigue were not fully credible because the SSA determined in January 2004 that she could perform sedentary work and identified three jobs (Tr. 24). However, the fact that the SSA determined Plaintiff could perform sedentary work is not a clear and convincing reason for discrediting Plaintiff's subjective complaints of pain. The ALJ further concluded Dr. Simon's internal medicine CE fails to support Plaintiff's complaints based on the daily activities she reported doing and Dr. Simon's physical examination; Digestive Health Center records fail to support Plaintiff's complaints because they lack clinical and diagnostic findings; Dr. Pitman's pain consultation erodes her credibility as he did not render any disability opinion or identify any functional limitations; Dr. O'Gara's records do not contain any clinical or diagnostic findings; and, no other physician, other than Dr. O'Gara, documented fibromyalgia trigger points or found that she appeared fatigued or sleep deprived (Tr. 24-25).

The Ninth Circuit previously explained:

> [F]ibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia . "The 'consensus' construct of fibromyalgia identifies the syndrome as associated with generalized pain and multiple painful regions .... Sleep disturbance, fatigue, and stiffness are the central symptoms," though not all are present in all patients. The only symptom that discriminates between it and other syndromes and diseases is multiple tender spots, which we have said were eighteen fixed locations on the body that when pressed firmly cause the patient to flinch. The diagnosis is now based on patient reports of a history of pain in five parts of the body, and patient reports of pain when at least 11 of 18 points cause pain when palpated by the examiner's thumb. Although the Mayo Clinic states that the syndrome is neither "progressive" nor "crippling," the symptoms can be worse at some times than others. Objective tests are administered to rule out other diseases, but do not establish the presence or absence of fibromyalgia.

*Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872 (9th Cir. 2004). "Objective physical signs, laboratory results, and x-ray results are generally negative,

13

and "[b]ecause the majority of patients appear tense and anxious and have no recognizable basis for symptoms, the syndrome is often considered psychogenic." *Id.* 872-873.

The medical evidence shows Plaintiff has a history of subjective complaints of pain dating back to at least 1995 (Tr. 19). No physician determined Plaintiff was malingering. In fact, based on the numerous tests and diagnostic procedures Plaintiff received from numerous physicians throughout her medical history, it can be inferred those physicians found Plaintiff's subjective complaints of pain credible. While medical evidence (or the lack thereof) is a relevant factor in determining the severity of Plaintiff's pain, the ALJ cannot reject Plaintiff's subjective pain testimony solely because it is not fully corroborated by objective medical evidence, particularly when the Ninth Circuit expressly recognizes that a lack of objective medical evidence is consistent with fibromyalgia.

Although the ALJ determined Plaintiff's daily activities were inconsistent with her reports of pain, Plaintiff testified her symptoms progressively worsened beginning six months after describing her activity level back in 2003 and she is no longer able to do those same activities (Tr. 431). The record indicates the ALJ only questioned Plaintiff about her daily activities reported in 2003 (*Id.*). It does not appear the ALJ questioned Plaintiff about her current activity level and how it is affected by her subjective complaints of pain. Accordingly, the ALJ's determination that Plaintiff's pain and fibromyalgia complaints are only partially credible is not clear and convincing.

The ALJ finally concluded Plaintiff's pain and fatigue complaints were not fully credible because there is no evidence of emergency room treatment for her "alleged fibromyalgia or fatigue"; there is no evidence of treatment for her abdominal pain on a consistent basis since 2002; she was not referred to a rheumatologist by Dr. O'Gara; all testing done on her has been negative; and, she has not sought help from United Way (Tr. 25). Plaintiff was diagnosed with fibromyalgia, which the ALJ acknowledged in determining this impairment was severe (Tr. 22); therefore, the ALJ's characterization of this impairment

14

as "alleged fibromyalgia" is not supported by the record (Tr. 25). Additionally, Dr. O'Gara testified he has been treating Plaintiff for opioid management for the last year or two and opined that he didn't think any of Plaintiff's issues were ever completely resolved (Tr. 398). Although Dr. O'Gara testified Plaintiff had not seen a rheumatologist (Tr. 396), Dr. O'Gara also testified that fibromyalgia and chronic fatigue have kept Plaintiff impaired the longest (Tr. 394). Furthermore, whether or not Dr. O'Gara referred Plaintiff to a rheumatologist has no bearing on Plaintiff's own subjective pain credibility. Finally, as discussed *supra*, Plaintiff's negative test results are consistent with fibromyalgia and Plaintiff electing not to seek help from United Way, assuming Plaintiff knew she could seek help from United Way for fibromyalgia, is not clear and convincing. Accordingly, the ALJ has not provided clear and convincing reasons for rejecting Plaintiff's subjective pain and fatigue testimony.

### III. CONCLUSION

The remaining question is whether to remand for further administrative proceedings or simply for the payment of benefits. An award of benefits is warranted where the record has been fully developed and where further administrative proceedings would serve no purpose. *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). The Ninth Circuit has credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id* at 1292.

In this case, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective pain testimony and failed to account for Plaintiff's CFS impairment in his severity determination, which arguably affected his step five analysis in determining what jobs, if any, Plaintiff could still perform. Although the ALJ gave clear and convincing reasons for only giving slight weight to Dr. O'Gara's RFC and fibromyalgia questionnaire, they were still

15

entitled to some weight since Dr. O'Gara was her treating physician since 1995 and was very familiar with Plaintiff's medical history. Dr. O'Gara did not personally examine Plaintiff to determine her RFC and did not personally diagnose Plaintiff with fibromyalgia and CFS; but, he did treat Plaintiff for over ten years and agreed with the diagnosis of fibromyalgia and CFS. Additionally, Dr. O'Gara determined Plaintiff's RFC after reviewing test results conducted by Sparks-Reno Spinal and Rehabilitation Therapy during a five-hour functional capacity evaluation (Tr. 312-313) and presumably taking into account his extensive personal knowledge of Plaintiff's past medical history. Dr. Simon also diagnosed Plaintiff with fibromyalgia and CFS, although he found Plaintiff could do light or sedentary work, and Dr. Skidmore diagnosed Plaintiff with USD specifically noting the diagnosis was made due to Plaintiff's willingness to attend to the MSE and do so well (Tr. 21). The ALJ did not make a finding that Plaintiff was malingering and no other physicians made such a finding.

Given Plaintiff's long history of subjective pain complaints, extensive medical history, no finding of malingering, and her treating physician's determination that Plaintiff's fibromyalgia and CFS are severe and permanent, Plaintiff met her burden of showing the combination of her impairments *could reasonably produce* the subjective pain and fatigue alleged. Plaintiff's willingness to participate in any testing and procedures proscribed by various physicians also supports Plaintiff's credibility regarding her subjective pain. Because the ALJ improperly rejected Plaintiff's subjective pain testimony, that testimony is taken as true. *Varney v. Sec. of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988).

In reviewing the record as a whole and taking Plaintiff's pain testimony as true, the court should find there are no outstanding issues to be resolved, the record has been fully developed and the ALJ would be required to award benefits.

/ / /

/ / /

/ / /

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal (Doc. #8) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion for Affirmance of Commissioner's Decision (Doc. #9) be **DENIED** and that the decision of the ALJ be **REVERSED AND REMANDED** for immediate payment of benefits.

DATED: September 26, 2007.

_____
UNITED STATES MAGISTRATE JUDGE